**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**JEFFREY ALLRED,**

                    **Plaintiff,**                    **06-CV-0456Sr**

        **-vs-**

**CAPTAIN KNOWLES, Hearing Officer**
**SGT. NOTO,**

                    **Defendants.**
_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including entry of final judgment.  Dkt. #14.


Plaintiff, Jeffrey Allred, filed this _pro se_ action seeking relief pursuant to 42 U.S.C. § 1983.  Dkt. #1.  Plaintiff alleges that while an inmate at the Gowanda Correctional Facility ("Gowanda") his rights pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated.  _Id._  Currently before the Court is defendants' motion for summary judgment.  Dkt. #18.  For the following reasons, defendants' motion for summary judgment is granted and the plaintiff's complaint is dismissed in all respects.

## BACKGROUND

Plaintiff filed this action on July 11, 2006, against defendants, Michael Knowles and Louis Noto, pursuant to 42 U.S.C § 1983, seeking monetary damages. *Id.* The action arises from a misbehavior report issued on or about July 27, 2003 by defendant Noto against plaintiff and the resulting Tier III disciplinary hearing conducted by defendant Knowles. *Id.* Specifically, the complaint alleges the issuance of a false misbehavior report, retaliation and violation of plaintiff's due process rights. *Id.*

At the time of the events alleged in the complaint, plaintiff was an inmate in the care and custody of the New State Department of Correctional Services ("DOCS") housed at Gowanda. Dkt. #1, p.2; Dkt. #20, p.1. Defendant Knowles was a Captain at Gowanda and his duties included, from time to time, conducting inmate disciplinary hearings. Dkt. #1, pp.3-4; Dkt. #21, pp.1-2. Sergeant Noto was a DOCS Sergeant on plaintiff's housing unit at Gowanda. Dkt. #1, p. 4; Dkt. #22, pp.1-2.

On July 22, 2003, at approximately 8:30 p.m., Correctional Officer Millich discovered several marijuana cigarettes during a search of inmate Meja's cell. Dkt. #22, p.3. Consequently, defendant Noto initiated an investigation into the matter. Dkt. #1, p. 8; Dkt. #22, p.3. Defendant Noto maintained that Meja told him that he had purchased the marijuana cigarettes from plaintiff. Dkt. #22, p.3. Based on Meja's identification of plaintiff and information allegedly received from confidential informant(s) –- who identified plaintiff as a drug dealer and indicated that the sale in

question occurred between 7:00 and 8:00 p.m. on July 22, 2003 in the prison yard –-
defendant Noto issued a misbehavior report charging plaintiff with violating Inmate Rule
113.25.  Dkt. #1, pp.22 and 25; Dkt. #22, p. 3.  Inmate Rule 113.25 provides that "an
inmate shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia,
controlled substance or marijuana.  An inmate shall not conspire with any person to
introduce such items into the facility."  Dkt. #22, p.2; *see also* 7 NYCRR §
270.2(14)(xv).

On July 28, 2003, a Tier III disciplinary hearing was conducted before
defendant Knowles.  Dkt. #1, p.23; Dkt. # 21, p.2.  At the hearing, plaintiff testified in his
own defense that he was at a Nation of Islam ("NOI")/Black studies program during the
period of the alleged drug sale in the prison yard.  Dkt. #1, p.24; Dkt. # 21, p.6.  Plaintiff
called two other inmates, Ford and Williams, as alibi witnesses.  Dkt. #1, p. 29; Dkt.
#21, p.7.  Ford and Williams attended the NOI/Black studies program with plaintiff, but
could not verify the time plaintiff left.  Dkt. #21, pp.7 and 16.  The sign-out sheet for the
NOI/Black studies class did not indicate the time plaintiff left, although it indicated that
both Ford and Williams left at 7:00 p.m.  *Id.*  Plaintiff did not sign back into his housing
unit until 8:10 p.m. and no one was able to verify his whereabouts after 7:00 p.m.  Dkt.
#21, p.17.  Defendant Knowles interviewed the confidential informant(s) outside the
presence of plaintiff and found them to be credible witnesses.  Dkt. #21, pp.7-8.  The
confidential informant(s) identified plaintiff as a drug dealer and indicated that the sale
of the drugs to Meja occurred between 7:00-8:00 p.m. in the prison yard.  *Id.*  Meja also
testified at the hearing, and recanted his initial identification of plaintiff as the person

who sold him drugs. Dkt. #1, p.26; Dkt. #21, p.11. When asked by defendant Knowles

why he initially told defendant Noto that plaintiff was the individual who sold him drugs,

Meja answered that he did so because he wanted defendant Noto to "leave [him]

alone." Dkt. #24, Ex. D, p 5. In response, defendant Knowles asked Meja to confirm,

by answering in either the affirmative or the negative, if he initially identified plaintiff as

the individual who sold him drugs, to which Meja answered in the affirmative. *Id.*

On August 3, 2003, at the close of the disciplinary hearing, defendant

Knowles entered a guilty finding against plaintiff. Dkt. #24, Ex. C. Based on the

Hearing Disposition Report completed by defendant Knowles, he based his guilt

determination on the following evidence: defendant Noto's misbehavior report and his

testimony that Meja initially identified plaintiff as the individual who sold Meja drugs in

the yard; and the testimony of the confidential informant(s). *Id.* Defendant Knowles

imposed a penalty of 12 months of confinement in special housing unit ("SHU") and a

loss of privileges between the period August 22, 2003 and August 22, 2004.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The non-moving party must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);  *see also H.Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**Due Process Claim**

Plaintiff alleges that defendants deprived him of his constitutional right to procedural due process.  Dkt. #1, p.42.  This allegation appears to be based on the following: (1) that he was not afforded all of the procedural safeguards set forth in *Wolff v. McDonnell*[1] during the Tier III disciplinary hearing; and (2) that defendant Knowles was not an impartial hearing officer.

To prevail on a procedural due process claim under § 1983, a plaintiff must show that he possessed a protected property or liberty interest and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See*

---

[1]    418 U.S. 539 (1975).

*Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (liberty interest);  *Hynes v. Squillace*,

143 F.3d 653, 658 (2d Cir. 1998).


"A prisoner's liberty interest is implicated by prison discipline, such as

SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life.'"  *Palmer v. Richards*,

364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In

assessing whether the discipline imposed rises to this level, the Court of Appeals for the

Second Circuit has directed the district courts to consider both the conditions of

confinement and their duration, "since especially harsh conditions endured for a brief

interval and somewhat harsh conditions endured for a prolonged interval might both be

atypical."  *Id.*, quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).  In light of

this standard, the Court of Appeals has "explicitly avoided a bright line rule that a

certain period of SHU confinement automatically fails to implicate due process rights"

and has "explicitly noted that SHU confinements of fewer than 101 days could

constitute atypical and significant hardships if the conditions were more severe than the

normal SHU conditions . . . or a more fully developed record showed that even relatively

brief confinements under normal SHU conditions were, in fact, atypical."  *Palmer*, 364

F.3d at 64-65.

Notwithstanding the foregoing, courts in this Circuit "generally require that the duration of confinement be at least 100 days" to be categorized as constituting an "atypical and significant hardship." *Palmer v. Goss*, No. 02 Civ 5804(HB), 2003 U.S. Dist. LEXIS 18103, (S.D.N.Y. Oct. 10, 2003), *aff'd*, *Palmer*, 364 F.3d 60; *Sims v. Artuz*, 230 F.3d 14, 24 (2d Cir. 2003) (vacating dismissal of, *inter alia*, procedural due process claims, stating, during little more than a 4 ½ month period, Sims was sentenced to SHU for a total of nearly 3 ½ years); *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003) (quoting *Tookes v. Artuz*, No. 00CIV4969, 2002 U.S. Dist. LEXIS 12540 (S.D.N.Y. July 11, 2002)) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest."); *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"). Here, following the Tier III disciplinary hearing, defendant Knowles imposed a penalty of 12 months of confinement in SHU and a loss of privileges between the period August 22, 2003 and August 22, 2004. Thus, there can be no dispute that plaintiff has demonstrated a protected liberty interest. The issue that remains and that which will be addressed below, is whether plaintiff was deprived of that protected liberty interest without due process. Defendants maintain that plaintiff was not. Dkt. #21, p.2; Dkt. #22, p.7.

In *Wolff*, the Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff*, 418 U.S. at 563-66. Specifically, the Supreme Court identified the following procedures: advance written notice of the claimed violation or charges; the opportunity for an inmate to call witnesses and present documentary evidence in his/her defense, provided that such a process would not jeopardize institutional safety; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action taken. *Id.* Additionally, the findings must be supported by some evidence in the record. *Walpole v. Hill*, 472 U.S. 445, 454 (1985).

Here, contrary to plaintiff's contention, he was afforded all of the procedural safeguards set forth in *Wolff*. Dkt. #24, p 4-5. Plaintiff was provided with a copy of defendant Noto's misbehavior report before the hearing, giving him advance notice of the charge against him.[2] Dkt. #1, p.22; Dkt. #21, p.5. Plaintiff had the opportunity to call witnesses and present evidence. Dkt. #1, pp.26, 29; Dkt. #21, pp.6, 8. Plaintiff was also provided with a written statement of the guilty finding and the evidence relied on for the disposition. Dkt. #21, p.12. The guilty disposition was

_____

[2]    Plaintiff concedes this fact. However, he suggests that he was deprived of his due process rights under the standard set forth in *Wolff* because defendant Knowles found him guilty of drug possession, rather than sale of a narcotic substance, which he was charged with in the misbehavior report. Dkt. #24, p 5. However, inmate Rule 113.25, which plaintiff was charged with in the misbehavior report and found guilty of at the close of the Tier III hearing, encompasses possession ***and*** sale of a narcotic. Dkt. #21, pp.5 and 19.

supported by evidence in the form of defendant Noto's notes; defendant Noto's misbehavior report and testimony; and the testimony of the confidential informant(s), particularly because plaintiff's alibi was uncorroborated. *Id.* at pp.10-11. Thus, plaintiff's claim that he was deprived of procedural due process fails as a matter of law.

**Impartial Hearing Officer**

Plaintiff contends, in particular, that his due process rights were violated because defendant Knowles was not an impartial hearing officer. *See* Dkt. #1, p.6-8. Plaintiff points to the following to support his allegation: (1) that defendant Knowles was involved in both the Tier III hearing and in the investigation into plaintiff's drug sale; (2) that defendant Knowles instructed Meja to respond affirmatively at the hearing that plaintiff had sold Meja drugs although Meja testified at the hearing that he did not know plaintiff; and (3) that defendant Knowles rejected his alibi and confused the time of the drug sale at issue. Dkt. #1, pp.28, 39; Dkt. #24, p.6.

Indeed, as plaintiff correctly contends, "[a]n inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *see Wolff*, 418 U.S. at 570-71; *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994). An impartial hearing officer "is one who, inter alia, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir.1990); *Francis v. Coughlin*,

891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100 F.3d at 259; *see Francis*, 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen*, 100 F.3d at 259; *see Francis*, 891 F.2d at 46. A hearing officer may satisfy the standard of impartiality if there is "*some evidence* in the record" to support the findings of the hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).

In this case, there is ample evidence to support defendant Knowles' guilty finding: defendant Noto's misbehavior report and his testimony that Meja originally identified plaintiff as the individual who sold him drugs; and the testimony of the confidential informant(s), which was considered outside the presence of plaintiff. Dkt. #21, pp.8-9.

Notably, plaintiff's only defense at the Tier III hearing was that he had been at an NOI/Black studies program at the time of the drug sale, which took place

allegedly between 7:00-8:00 p.m.  Dkt. #21, p.7.  However, inmates Ford and Williams

could not verify plaintiff's alibi defense.  *Id.*  Because plaintiff did not sign back into his

cell area until 8:10 p.m., defendant Knowles determined that there was ample time for

plaintiff to sell the drugs in the yard during the period of his unexplained absence.  Dkt.

#21, pp.7, 16-18.


Plaintiff further contends that defendant Knowles violated his

constitutional right to due process by failing to adhere to the state guidelines for

conducting prison disciplinary hearings (set forth in Title 7 of the NYCRR §§ 253.1(b),

254.1[3]) because, he alleges, that defendant Knowles conducted the Tier III hearing and

was also involved in the investigation of plaintiff's drug sale.  Dkt. #24, p 6.


This argument fails because violations of state law that do not deprive the

plaintiff of a right "secured by the Constitution and laws" are insufficient to support a

claim under § 1983.  *See Baker v. McCollan*, 443 U.S. 137, 139-40 (1979);  *Shakur v.*

*Selsky*, 391 F.3d 106, 119 (2d Cir. 2004); *Blouin v. Spitzer*, 356 F.3d 348, 362 (2d Cir.

2004).  State procedural protections do not give rise to substantive federal rights.  *See*

*Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983)*; Holcomb v. Lykens*, 337 F.3d 217,

---

[3]        7 NYCRR § 253.1 gives superintendents the discretion to designate
DOCS employees to conduct disciplinary hearings.  Pursuant to § 253.1(b), "[n]o
person who has participated in any investigation of the acts shall be a hearing officer at
a hearing relating to those acts, nor shall any person who has prepared or caused to be
prepared the misbehavior report on which a  hearing is held, act as the hearing officer
on that charge."  Section § 254.1 of 7 NYCRR precludes a person who was a witness to
or who investigated an incident that is the subject of a disciplinary proceeding from
acting as a hearing officer relating to that incident.

224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.").  Moreover, "[s]tate procedures designed to protect substantive liberty interests entitled to protection under the federal constitution do not themselves give rise to additional substantive liberty interests." *Blouin*, 356 F.3d at 363.  It is "federal law, not state regulations, [that] determines the procedures necessary to protect that liberty interest."  *Id.* (citing *Watson v. City of New York*, 92 F.3d 31, 38 (2d Cir. 1996)).  Therefore, "the only relevant inquiry was whether the constitutional [procedures] were met, not whether state procedures were followed." *Shakur*, 391 F.3d at 119 (citing *Holcomb*, 337 F.3d at 224).  As set forth above, plaintiff's constitutional rights were not violated during the Tier III hearing.  Plaintiff's exclusive reliance on defendants' alleged violations of 7 NYCRR §§ 253.1(b) and 254.1 is insufficient to support his claim under § 1983.  *See Shakur*, 391 F.3d at 119; *Holcomb*, 337 F.3d at 224; *Ramsey v. Goord*, 661 F.Supp.2d 370, 391-92 (W.D.N.Y. 2009).

Accordingly, since plaintiff received all of the process he was due in the course of the Tier III disciplinary hearing, defendants' motion for summary judgment on plaintiff's due process claim is granted.

**Retaliation Claim**

Plaintiff alleges that, in retaliation for attending a Nation of Islam ("NOI")/Black Studies course and/or for his affiliation therewith, defendant Noto filed a false misbehavior report and gave false testimony and that defendant Knowles found him guilty.  Dkt. #1, p.43.

"In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for 'adverse action' taken against him by defendants."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002);  *see also Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  Third, the plaintiff must establish a causal connection between the protected speech and the adverse action.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), superseded by 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in the original).  This objective test

applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citing *Dawes*, 239 F.3d at 491). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights are implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

Here, even assuming plaintiff's affiliation with the NOI/Black studies program was constitutionally protected conduct, he cannot show that his affiliation therewith was a substantial motivating factor for the filing of the misbehavior report and the subsequent finding of guilt concerning the report. Defendant Knowles declares that he "did not even recall plaintiff prior to the hearing he conducted," and had no involvement whatsoever in any NOI activities. Dkt. #21, p.22. Similarly, defendant Noto declares that he had no knowledge of plaintiff's participation in the NOI/Black Studies program, and, up until the time of the instant litigation, "did not know that plaintiff attended such a course or was a member of the NOI." Dkt. #22, p.6. To this extent, plaintiff cannot demonstrate that his affiliation with the NOI/Black studies program was a motivating factor in defendants' actions. Since plaintiff cannot establish any plausible connection between NOI/Black studies participation and the misbehavior report and the guilty finding, his retaliation claim fails as a matter of law.

Assuming, *arguendo,* that plaintiff could show that the disciplinary actions were motivated by retaliatory animus (an assumption that has no basis in the record before this Court), plaintiff's retaliation claims would fail because defendants can easily show that they would have taken the same disciplinary actions even in the absence of the protected conduct. *See Davidson v. Chestnut*, 193 F.3d at 149 ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record shows that there was sufficient evidence, based on defendant Noto's investigation, to have charged plaintiff with a drug sale. Further, there was ample evidence at the Tier

III disciplinary hearing for defendant Knowles to find plaintiff guilty of the drug sale charge.  This is so particularly in the context of prison administration where courts must be cautious to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage.  *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

Accordingly, defendants' motion for summary judgment on plaintiff's claim of retaliation is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Dkt. #18. The Clerk of the Court is directed to enter judgment in favor of the defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

DATED:     Buffalo, New York
             October 5, 2010